UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STACI JO VOLLENDORFF, | ) | No. CV-09-0060-JPH |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on November 20, 2009. (Ct. Recs. 12, 16). Attorney Gary R. Penar represents plaintiff; Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12.)

**JURISDICTION**

Plaintiff protectively filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on August 3, 2006, alleging onset as of November 1, 2004. (Tr. 92-96, 97-99, 110.) The applications were denied initially and on

reconsideration. (Tr. 66-69, 71-73, 74-75.)

A hearing was held July 10, 2008, before Administrative Law Judge (ALJ) Paul L. Gaughen.  Plaintiff, represented by counsel, psychological expert W. Scott Mabee, Ph.D., and vocational expert Deborah N. Lapoint testified.  (Tr. 32-61.)  On September 3, 2008, the ALJ issued his decision (Tr. 10-29) finding if plaintiff stopped abusing substances she would no longer be disabled, meaning drug and/or alcohol abuse (DAA) is a contributing factor material to the disability determination (Tr. 29).  Accordingly, the ALJ found plaintiff not disabled as defined by the Act (Tr. 29).  On January 9, 2009, the Appeals Council denied review (Tr. 1-3).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 5, 2009 (Ct. Recs. 1,4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both parties, and are summarized here.

Plaintiff was 34 years old when she filed her applications for benefits (Tr. 27.)  She has a high school education and one and a half years of college but no degree.  (Tr. 42-43, 287.)  Plaintiff has worked as a secretary, insurance clerk, food service manager, cashier, and passenger booking clerk. (Tr. 54-55, 123, 129.)  She alleges disability onset as of November 1, 2004, due to depression, anxiety, carpel tunnel syndrome, chemical dependency, post traumatic stress disorder (PTSD), a broken

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 2 -

tailbone, Grave's disease, endometriosis, and high blood pressure
(Tr. 122).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability"
as the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if any impairments are of such severity that a
plaintiff is not only unable to do previous work but cannot,
considering plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.
20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person
is engaged in substantial gainful activities.  If so, benefits are
denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If
not, the decision maker proceeds to step two, which determines
whether plaintiff has a medically severe impairment or combination
of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 3 -

of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past.  If a plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, plaintiff's residual functional capacity ("RFC")
assessment is considered.  If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work.  The burden
then shifts, at step five, to the Commissioner to show that (1)

plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d)(2)(C)and 1382a(3)(J); *Bustamante v. Massanari,* 262 F.3d 949 (9th Cir. 2001); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995

(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839

F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

**ALJ'S FINDINGS**

At the outset, the ALJ found plaintiff met the DIB
requirements through December 31, 2009. (Tr. 10, 12, 110.)  At
step one, the ALJ found plaintiff has not engaged in substantial
gainful activity.  (Tr. 13.)  At steps two and three, the ALJ
found plaintiff suffers from major depressive disorder, anxiety
disorder with elements of post-traumatic stress disorder (PTSD),
methamphetamine use/abuse, carpal tunnel syndrome by history
(worse on the right with symptoms on the left possibly related to
reflex sympathetic dystrophy), degenerative disc disease, and
remote history of coccyx fracture, impairments that are severe but
which do not alone or combination meet or medically equal a
Listing impairment.  (Tr. 13, 22.)  The ALJ found plaintiff less
than completely credible.  (Tr. 25-26.)  At step four, relying on
the VE, the ALJ found plaintiff's RFC for a range of light work
when DAA is included prevents performing her past relevant work.
(Tr. 26.)  At step five, again relying on the vocational expert,
the ALJ found when DAA is included, there are no jobs plaintiff
could perform.  He found plaintiff disabled at step five when DAA
is included. (Tr. 27.)  The ALJ continued the DAA analysis as
required.  He found if plaintiff stopped abusing substances, she
would have the RFC to perform past relevant work as a secretary,

insurance clerk, and administrative clerk. (Tr. 28.)  Accordingly, the ALJ found that plaintiff is not disabled as defined by the Social Security Act.  (Tr. 29.)

### ISSUES

Plaintiff contends the Commissioner erred as a matter of law by failing to properly weigh the medical and lay evidence, and this in turn led to an incomplete assessment of plaintiff's RFC. Plaintiff contends the ALJ erroneously relied on the VE's testimony, "arguabl[y]" in conflict with the DOT, without asking for an explanation. (Ct. Rec. 13 at 23, 30, 33, 38-40.)  The Commissioner asks the Court to affirm the decision because, he asserts, it is supported by the evidence and free of error. (Ct. Rec. 16-2 at 12).

### DISCUSSION

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's

physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

<u>Dr. Kelley's December 2007 opinion</u>

Plaintiff alleges the ALJ erroneously gave more credit to the November 2006 opinion of examining physician A. Peter Weir, M.D., than to the opinion of treating physician Kal Kelley, M.D., in

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                      - 9 -

1   December of 2007. (Ct. Rec. 13 at 25-30.)  Specifically, plaintiff

2   alleges the ALJ should have credited Dr. Kelley's opinion

3   "plaintiff is limited to sedentary work with handling and postural

4   limitations."[1] (Ct. Rec. 13 at 25.)  The Commissioner asserts the

5   ALJ properly rejected Dr. Kelley's opinion.  (Ct. Rec. 16-2 at 7-

6   8.)

7        Dr. Kelley began seeing plaintiff on September 18, 2007,

8   almost three years after onset.  (Tr. 619.)  With respect to

9   assessed handling limitations, the ALJ points out plaintiff fails

10  to show they lasted twelve months as required by the Act:

11       [plaintiff] originally injured her left shoulder in
         September 2004, but was released to full work duties
12       by [PAC] Mr. Mapes in October 2004 at Exhibit 20F [a
         month before onset]. She later began complaining of
13       numbness in both hands, worse on the right, and
         [treating physician] Dr. Artzis subsequently opined
14       in March 2005 [four months after onset] at Exhibit 9F
         [Tr. 485] that, pending carpal tunnel surgery, the claimant
15       was limited to sedentary work, pending convalescence. She
         subsequently underwent right carpal tunnel release in June of
16       2005 and was released to
         return to work October 1, 2005 at Exhibit 9F, with
17       no limitations noted. Based on these evaluations,
         there does not appear to be a 12-month period of
18       disability related to either [CTS or a left shoulder]
         condition.
19
    (Tr. 25-26.)
20
         The ALJ appropriately relied on plaintiff's failure to meet
21
    the durational requirement when he rejected Dr. Kelley's
22
    contradicted opinion.  The reason is specific, legitimate and
23
    fully supported by the record.
24
    _____
25          [1]

26  Dr. Kelley assessed moderate, defined in the form as
    significant, interference in the ability to walk, lift, handle
27  and carry. He assessed "restricted mobility, agility, or
    flexibility" with bending, climbing, crouching, kneeling,
28  pulling, pushing and stooping. (Tr. 583.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 10 -

As noted by the Commissioner, the ALJ also rejected Dr. Kelley's opinion based on the opinion of examining physician Dr. Weir. (Ct. Rec. 16-2 at 7-8, referring to Tr. 26.)  Dr. Weir notes plaintiff "was given a dish of small seeds of various sizes and was able to sort the seeds into groups according to size without difficulty" (Tr. 288).  He assessed no manipulative restrictions, and specifically opined: "claimant is not limited in her ability to use her hands for grasping and manipulating, or for fine and dexterous movements" (Tr. 290).

The ALJ observes plaintiff began seeing Dr. Kelley after her regular physician, John Frlan, M.D., discharged her for missing appointments.  (Tr. 19-20; Tr. 618.)  Dr. Frlan expressed additional concerns: "[w]e have been giving her large amount[s] of pain pills and they just seem to increase and increase"; and he suspected plaintiff's abscesses indicated intravenous drug use. (Tr. 20, 25, 618-619.)  At plaintiff's first appointment with Dr. Kelley, in September of 2007, she tested positive for THC, opiates, methadone, and oxycodone. (Tr. 620, 659.)  Plaintiff's active use of substances is another reason Dr. Kelley's opinion was not relevant to the ALJ's determination of plaintiff's impairments without DAA.

As noted, plaintiff argues the ALJ improperly rejected Dr. Kelley's December 2007 opinion.  The date of Dr. Kelley's opinion is not clear, however, because the final page, page four, of the GAU report (referred to by the ALJ and the parties) is missing from the record (Tr. 582-583).  In his GAU report, Dr. Kelley assessed limitations resulting from lumbar disc disease, axonal injury at C6-C7, and right hip bursitis (Tr. 583).  The ALJ refers

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 11 -

to Dr. Kelley's GAU evaluation "in October of 2007" limiting plaintiff to sedentary work due to "chronic back pain, hypothyroidism and hepatitis C." ((Tr. 21, 26, both citing Exhibit 23F). Dr. Kelley's GAU assessment reveals: the report is stamped "received" in Colville on December 19, 2007, plaintiff is limited to sedentary work, and the assessed impairments are due to lumbar disc disease, axonal injury at C6-C7, hepatitis C and bursitis. (Tr. 582-583.) On October 15, 2007, Dr. Kelley assessed chronic back pain, hypothyroidism, and hepatitis C (Tr. 584), impairments the ALJ perhaps mistakenly felt were assessed by Dr. Kelley in December of 2007. Dr. Kelley's undated GAU assessment also fails to indicate the expected duration of the impairments. The missing final page normally contains this information. (*See e.g.*, Tr. 576, 580.) The ALJ's error if any appears harmless, however, since Dr. Kelley's opinion fails to meet the durational requirement, and the ALJ's other reasons to reject it are specific, legitimate and supported by substantial evidence.

The ALJ rejected Dr. Kelley's opinion based on his assessment of plaintiff's credibility (see below), Dr. Weir's opinion (more than two years after onset) that plaintiff was deconditioned but able to perform a wide range of light work, and, as noted, other treating physicians, including Dr. Artzis, released plaintiff to work after onset without limitations. (Tr. 26; cited at Tr. 20-22, 25.)

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility. (Tr. 25-26.) Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 12 -

between a claimant's subjective complaints and diagnosed condition.  *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ gave clear and convincing reasons for his credibility assessment, some of which include failing to follow recommended courses of treatment, drug seeking behavior, activities inconsistent with the degree of impairment alleged, and inconsistent statements.  (Tr. 25-26.)  Each is fully supported.

Plaintiff failed to follow recommended courses of treatment. On March 6, 2007, providers report plaintiff attended counseling "sporadically" and failed to keep any of three scheduled appointments to evaluate the need for psychotropic medication. (Tr. 337, 444.)  On March 26, 2007, Dr. Frlan noted plaintiff was

scheduled for follow up lab testing for hepatitis but had failed
to have the tests drawn. (Tr. 591-592.)  Plaintiff has engaged in
drug seeking behavior.  After entering into a pain contract with
Dr. Frlan, she ran out of prescribed pain medication (dilaudid)
early; Dr. Frlan refused to refill it. (Tr. 449, 451.)  Similarly,
on November 21, 2006, another treatment provider denied
plaintiff's request for an early refill of hydrocodone. (Tr. 317.)

The Commissioner points out the ALJ relied on plaintiff's
activities inconsistent with the degree of impairment claimed when
he assessed credibility. (Ct. Rec. 16-2 at 8, citing Tr. 25.)
Plaintiff's activities include attending college full time
(4/18/05 at Tr. 234 and 6/17/05 at Tr. 478); working waiting
tables (12/13/06 at Tr. 463); catering a large event (12/26/06 at
Tr. 306 and 1/3/07 at Tr. 461), and helping remove a 200 pound
canopy from a pickup truck (11/5/2006 at Tr. 364). (noted by the
ALJ at Tr. 14, 16-18, 25-26.)  Not relied on by the ALJ but also
supporting his assessment is a note on June 14, 2007, indicating
plaintiff has "been working at the body shop . . . [d]oing some
walking and paperwork;" and in July of 2007, plaintiff took a
river rafting trip and slept in a barn (Tr. 608, 614).

Plaintiff's inconsistent statements include denying drug
abuse history to physicians even though a drug screen in September
of 2007 was positive for marijuana, as the ALJ observes.  (Tr.
25); *compare* Tr. 582 (Dr. Kelley notes no current indication or
history of alcohol or drug abuse), *with* Tr. 619 (on September 18,
2007, Dr. Kelley observes plaintiff's urine test is positive for
marijuana).

The ALJ's reasons for finding plaintiff less than fully

credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment also cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989).

     To the extent the ALJ rejected Dr. Kelley's contradicted 2007 opinion limiting her to sedentary work based on handling and postural limitations, the ALJ's reasons are legitimate, specific, and supported by substantial evidence in the record.  *See Lester v. Chater*, 81 F. 3d 821, 830-831 (9th Cir. 1995)(holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's contradicted opinion).

     The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405 (g).

Weighing opinions of mental health providers

     Plaintiff argues the ALJ erred by rejecting the opinions of mental health treatments providers in favor of the testifying

psychologist's opinion. (Ct. Rec. 13 at 30-33.)  According to the
Commissioner, the ALJ is correct because "the evidence of lay
therapist Mr. Rigg, as well as evidence from Plaintiff's other
psychological treatment [providers], supports the notion that her
mental limitations were related to her early stages of withdrawal
from DAA at the time the assessments were made."  (Ct. Rec. 16-2
at 8, referring to Tr. 26.)  The Commissioner argues these
opinions, therefore, "have no place in assessing Plaintiff's
mental limitations absent DAA, as the ALJ was charged to do[.]"
(Id.)

    The Commissioner is correct. The ALJ found plaintiff is
disabled when DAA is included.  The relevant inquiry became
whether she would continue to be disabled if she stopped abusing
drugs and/or alcohol.

    The ALJ considered the testifying expert, W. Scott Mabee,
Ph.D.'s opinion when trying to answer this question.  Dr.  Mabee
pointed out the only mental health records are dated July  2006
through July 2007 (Tr. 34, 689).  His record review included an
August 9, 2006, evaluation by Phyllis Rigg and a supervising
psychologist (Tr. 34, referring to Tr. 266-268).  Ms. Rigg notes
drug and alcohol use is indicated and worsens all other conditions
(Tr. 266-267).  She opined abstinence would improve depression and
anxiety (Tr. 266).  Ms. Rigg assessed, among other disorders,
amphetamine dependence in early remission by self-report. (Id.)
The ALJ notes Ms. Rigg's evaluation is "just one month after
[plaintiff's] completing inpatient treatment" (Tr. 26).  Dr. Mabee
observes this, too (Tr. 35).  Plaintiff apparently completed
treatment on July 30, 2006 (Tr. 265, 577).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 16 -

Dr. Mabee points out plaintiff attended counseling sporadically and did not take psychotropic medication (Tr. 35). He assessed, when DAA is excluded, limitation in the ability to maintain concentration for extended periods (rated none to moderate) and to complete a normal workday and workweek without interruptions from psychologically based symptoms (rated none to moderate).  He assessed moderate limitations in the ability to work in coordination with or proximity to others, interact appropriately with the public, get along with co-workers or peers, and respond appropriately to changes in the work setting (Tr. 690-691).

Plaintiff alleges the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of "plaintiff's therapist, Ms. Riggs, and the supervising psychologist at SCCS."  (Ct. Rec. 13 at 33.)   The ALJ relied on the opinion of Dr. Mabee, his assessment of plaintiff's credibility, plaintiff's failure to follow through with treatment, and the lack of treatment records when he assessed psychological limitations excluding DAA.  The ALJ's reasons are both specific and legitimate, and supported by substantial evidence. The ALJ's assessment of the evidence of physical and mental impairment excluding DAA, and of plaintiff's credibility, is supported by the record and free of legal error.

**B.  Lay testimony**

Plaintiff contends the ALJ failed to properly weigh the lay witness testimony of plaintiff's friend, Elizabeth Olson.  (Ct. Rec. 13 at 33-34.)  The Commissioner responds that the ALJ cited "specific evidence, germane to the lay witness, which belied her

conclusion that Plaintiff could not work." (Ct. Rec. 16-2 at 9.)

The ALJ must take into account lay witness testimony, unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may reject lay testimony which conflicts with medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th cir. 2005).

The Commissioner is correct. The ALJ rejected Ms. Olson's opinion plaintiff could not work. The ALJ notes Ms. Olson's report is generally consistent with the medical record indicating plaintiff is able to perform sedentary to light exertional activities:

> [Ms. Olson describes plaintiff as having] no problems with personal care . . . She is capable of light housekeeping, driving a car, shopping alone, cooking, reading. She attends weekly meetings and church. She can walk 2 miles and pay attention 30 minutes at a time. She is able to finish tasks.

(Tr. 25, referring to Exhibit 5E.)

The ALJ accepted the lay testimony of plaintiff's friend to the extent it was supported by other evidence in the record. He rejected her conclusion as inconsistent with the medical and other evidence, a reason germane to Ms. Olson's testimony. There is no error in the ALJ's assessment of the lay witness's opinion.

## C. RFC Assessment

The ALJ assessed an RFC (excluding DAA) for a range of light work with a sit/stand option. He limited climbing, balancing, stooping, kneeling, crouching, and crawling to "occasionally." (Tr. 28.) The ALJ opined plaintiff "cannot do continuous strenuous gripping with either hand in work activities." Overhead

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                            - 18 -

lifting with the left arm is limited to occasionally.  The ALJ
opined plaintiff needs a job with "limited contacts or job duties
to be carried out essentially alone, but is capable of perfunctory
social contact."

Plaintiff alleges the ALJ's RFC assessment (when DAA is
excluded) is flawed because ALJ Gaughen failed to properly weigh
the opinions of Dr. Kelley and mental health professionals.  The
Court has already addressed this argument.

Plaintiff alleges the RFC is also flawed because the ALJ
"failed to acknowledge" that "Dr. [David] Henzler found arm
impairments based on objective findings." (Ct. Rec. 13 at 35,
referring to Tr. 588.)  Dr. Henzler's report is dated January 3,
2008 - - more than three years after onset.  As indicated, the ALJ
determined plaintiff fails to establish a 12 month period of
disability related to either CTS or her left shoulder injury in
September of 2004, a finding well supported by the record.  The
ALJ discusses Dr. Henzler's report, as well as other evidence,
before assessing an RFC limiting overhead lifting with the left
arm to "occasionally." (Tr. 26, 28.)  It appears the ALJ fully
took into account this evidence.

Plaintiff alleges the ALJ erred because he "did not consider
all impairments, including those deemed not 'severe'" when
assessing plaintiff's RFC.  (Ct. Rec. 13 at 36-38.)  The Court
notes plaintiff's activities alone fully support the RFC. The ALJ
did not err when he weighed the evidence at step two, nor when he
assessed plaintiff's RFC.

With respect to mental impairments, plaintiff alleges the ALJ
failed to incorporate all of Dr. Mabee's assessed limitations into

the RFC.  (Ct. Rec. 13 at 37-38.)  Specifically, she alleges the ALJ should have included limitations in the ability to 1) maintain attention and concentration, 2) complete a normal work day/week without interruptions from psychologically based symptoms, and 3) perform at a reasonably consistent pace without an unreasonable number and length of rest periods, all at a level of "no significant to moderate" limitation.  Plaintiff argues the ALJ should have included a moderate limitation in the ability to respond appropriately to changes in the work setting, as assessed by Dr. Mabee.  (Ct. Rec. 13 at 37-38, citing Tr. 26, 55-56, 689-692.)

Dr. Mabee's more dire limitations are unsupported by the record, unlike the assessed RFC.  During the period of alleged disability, plaintiff attended college full time, worked waiting tables and catering (though at less than SGA levels), and engaged in hobbies such as river rafting.  The Court finds the RFC assessment is without error.

**D.   VE's testimony**

Plaintiff argues the VE's testimony "arguably" conflicted with the DOT and the ALJ failed to have her explain the conflict. (Ct. Rec. 13 at 39-40.)  The VE testified a person with plaintiff's limitations could perform her past relevant work as a secretary, insurance clerk, and administrative clerk, when DAA is excluded (Tr. 56-57).  Plaintiff alleges:

> The VE testified that all three jobs required
> frequent reaching, handling and fingering, however
> the ALJ limited plaintiff to no work which requires
> continuous strenuous gripping/handling with either
> hand.   Tr. 28, 55-56. The VE did not provide any
> explanation for this arguable contradiction, contrary
> to law.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 20 -

1  (Ct. Rec. 13 at 39-40.)

2      The Court agrees with the Commissioner: frequent handling of

3  objects, such as paper, does not require continuous strenuous

4  gripping.  (Ct. Rec. 16-2 at 11.)  There was no conflict between

5  the VE's testimony and the DOT.

6                           **CONCLUSION**

7      Having reviewed the record and the ALJ's conclusions, this

8  Court finds the ALJ's decision is free of legal error and

9  supported by substantial evidence..

10     **IT IS ORDERED:**

11     1. Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is

12 **GRANTED.**

13     2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is

14 **DENIED.**

15     The District Court Executive is directed to file this Order,

16 provide copies to counsel for Plaintiff and Defendant, enter

17 judgment in favor of Defendant, and **CLOSE** this file.

18     DATED this 21st day of December, 2009.

19                          s/ James P. Hutton
                          JAMES P. HUTTON
20                UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 21 -